IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Travis Wright,<br><br>                      Plaintiff,<br><br>vs.<br><br>S.L.R.D.C. Director Ray, *et. al.*,<br><br>                      Defendants. | C/A No. 2:23-cv-5913-JFA<br><br>**ORDER** |

## I.    INTRODUCTION

Travis J. Wright (Plaintiff), a state pre-trial detainee proceeding *pro se*, filed this civil action on November 17, 2023, seeking relief for alleged constitutional violations occurring during his confinement at Sumter Lee Regional Detention Center (Detention Center). (ECF No. 1). This matter is before the Court upon Plaintiff's motion for a preliminary injunction and temporary restraining order. (ECF No. 109). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), the matter was referred to the Magistrate Judge for initial review.

On December 26, 2025, the Magistrate Judge issued a thorough Report and Recommendation (Report), recommending that the Court deny Plaintiff's preliminary injunction motion. (ECF No. 159). On January 6, 2025, Plaintiff filed objections to the Report. (ECF No. 162). Defendants did not file a reply and the time to do so has expired. Therefore, this matter is ripe for review.

## II.     FACTS

As noted above, this action arises from a series of alleged constitutional violations Plaintiff experienced at the Detention Center. The Court takes the following background directly from the Report:

Plaintiff claims that when he arrived at the Detention Center in August 2023, he was separated from the general population and placed in solitary confinement (a term the Complaint uses interchangeably with "maximum security"), despite having "no disciplinary behavior issues" or "administrative sanctions." (ECF No. 1, pgs. 6, 16–17). When asked, Defendant Captain Sweat apparently informed Plaintiff that he was classified as a "max" detainee based on his arrest charges.

Plaintiff alleges that on September 27, 2023, he was examined by Defendant Nurse Practitioner Grump, and she advised Plaintiff to eat a medically appropriate diet to treat his diverticulitis. (ECF No. 12-2 at 2); *see also* (ECF No. 1 at 7, 9–10); (ECF No. 1-2 at 3). Plaintiff alleges Defendant Lieutenant Benjamin was present during this examination and offered Plaintiff additional dietary advice based on her own experiences with "like medical conditions." (ECF No. 1 at 9). Plaintiff alleges that despite his need for a "proper diet for diverticulitis stomach illness," Defendants Head Nurse K. Troublefield, Nurse Practitioner Grump, and other medical staff and correctional officers at the Detention Center ignored Plaintiff's repeated requests on this issue, such that he has been forced to consume foods that are "harmful to [his] colon." (ECF Nos. 1 at 7–10, 17–19, 22; 12 at 2–3; 12-2 at 4). Plaintiff alleges that while he has been able to obtain a "vegan meal" as an alternative menu

option on occasion, this option is not always made available to him. (ECF No. 12 at 7, 9–10). Plaintiff alleges that as a result of the foregoing medical "neglect[]," he has suffered weight loss, "fevers, loss of appetite, stomach pain to no extreme, . . . painful toilet usage, [and] possible other internal damage." (ECF Nos. 12 at 10; 12-2 at 4). Plaintiff appears to allege that through this conduct, Defendants Grump and Troublefield have violated his constitutional rights to equal protection and to be free from cruel and unusual punishment. (ECF No. 71 at 2).

On October 31, 2024, Plaintiff filed his motion for a preliminary injunction asking the Court to enjoin Defendants from: (1) "rejecting Plaintiff's personal mail and holding legal mail"; (2) "serving Plaintiff harmful foods as unto his diverticulitis illness"; (3) "subjecting Plaintiff to inhuman and unsanitary living condition[s] of not cleaning cells, no clean clothes and bed linen, no shower in four weeks or days"; (4) "punishment of charges while innocent before verdict of guilt"; and (5) "inadequate requested medical examines [sic]." (ECF No. 109 at 1–2). Plaintiff further asks that the Court "restrain[]" Defendants from: (1) "serving Plaintiff food out of temperature and that's harmful to diverticulitis illness"; (2) "stopping and rejecting Plaintiff's personal mail"; (3) "excessive confinement in an overcrowded 5/8 cell"; (4) "not allowing Plaintiff showers on a daily basis"; (5) "not allowing Plaintiff clean cell, clothes, and linen[s]"; (6) "not allowing legal law resources"; (7) "stopping Plaintiff visits of immediate family like (mother and son) non penological reasoning"; and (8) "not allowing Plaintiff proper exercise due unto restraints when out of cell." *Id.* at 2.

In response to Plaintiff's motion, Defendants have submitted an affidavit from Defendant Patricia Ray ("Ray"), the Director of the Detention Center. (ECF No. 139-1). In the affidavit, Ray describes conditions of confinement imposed on maximum security inmates housed at Sumter County Detention Center. *Id.* Ray avers that "[t]he Detention Center['s] practice is to perform daily and weekly inspections of inmate living areas/common spaces and the immediate resolution of any noted deficiencies, including a pest and vermin control process, to maintain the facility in a clean, orderly, and sanitary manner." *Id.* Ray avers that "[i]nmates are assigned to perform cleaning duties" and that Detention Center staff supervises the inmates "while they perform those duties." *Id.* at 5. According to Ray, "Detention Center staff conducts a complete sanitation inspection of the detention center" and reports any "noted problems" to the "appropriate shift supervisor for immediate rectification." *Id.* Ray further avers that inmates "are provided with hygiene supplies issued free of charge." *Id.* On the issue of visitation, Ray avers that "[i]nmates are afforded visitation privileges on a schedule to be determined by the Detention Center Director." *Id.* at 6. "With the exception of professional visits . . . visitation is considered a privilege and not a guaranteed right." *Id.* According to Ray, "[t]he Detention Center does not have resources to have social contact visits, and according to policy, all social visits are non-contact visits." *Id.* at 7. Ray further avers that "[a]ny claim that the Detention Center is overcrowded is demonstrably false. We have a 560-bed facility (up to 592 beds if holding cells are included). We have 397 inmates right now and our facility has never once been overcrowded in the entire time I have worked here." *Id.* at 8.

After reviewing the record and the parties' submissions, the Magistrate Judge found that Plaintiff failed to carry his burden in showing that he is entitled to preliminary relief. For the reasons discussed below, the Court agrees.

### III. STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). A district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate's Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005). Then, the court may accept, reject, or modify the Report or recommit the matter to the magistrate judge. 28 U.S.C. § 636(b).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report

thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

## IV. DISCUSSION

The Report recommends denying Plaintiff's motion for a preliminary injunction because Plaintiff failed to carry his burden in proving that he is entitled to preliminary relief. The Court agrees.

A preliminary injunction "protect[s] the status quo ... to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.,* 333 F.3d 517, 525 (4th Cir.2003). It is "an extraordinary remedy never awarded as of right." *Winter v.*

*Nat. Res. Def. Coucil, Inc.,* 555 U.S. 7 (2008) (citing *Munaf v. Geren,* 553 U.S. 674, 689–90 (2008)).

To obtain a TRO or preliminary injunction, a plaintiff must make a "clear showing" that (1) he is likely to succeed on the merits; (2) he will suffer irreparable harm if the TRO or preliminary injunction is not granted; (3) the balance of equities favors him; and (4) the TRO or injunction is in the public interest. *Winter*, 555 U.S. at 374, 376; *Moore v. Kempthorne,* 464 F.Supp.2d 519, 525 (E.D.Va.2006) ("The standard for granting either a TRO or a preliminary injunction is the same."); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n,* 575 F.3d 342, 345–47 (4th Cir.2009) (explaining how the *Winter* standard for preliminary injunctions was different from the standard previously applied in the Fourth Circuit). The plaintiff must establish all four elements to receive injunctive relief. *Winter,* 129 S.Ct. at 374.

The Magistrate Judge found that Plaintiff "failed to demonstrate a likelihood of success on the merits of his" conditions of confinement, deliberate indifference, and due process claims because they "rest largely on [] unsubstantiated allegations." (ECF No. 159, pgs. 6–7). Similarly, the Magistrate Judge found that Plaintiff failed to allege a cognizable injury resulting from the alleged restricted access to the law library and temporary confiscation of his legal mail. *Id.* Finally, the Magistrate Judge found that Plaintiff failed to make a clear showing that he will suffer irreparable harm, that the balance of the equities tips in his favor, and that an injunction is in the public interest. *Id.* at 7.

In response, Plaintiff filed eight pages of objections that appear to be little more than reiterations of previously pled factual allegations. (ECF No. 162). Plaintiff argues that

Defendants unjustifiably placed him in maximum security and have undertaken a "campaign of harassment" by unequally enforcing SCDC policy against him. *Id.* at 1, 4. Specifically, Plaintiff argues that other inmates are entitled to correspondence, religious services, and adequate meals and hygiene care. *Id.* at 4. Plaintiff argues that Defendants lied to the Magistrate Judge about facility overcrowding and cleanliness. *Id.* at 5–6. Further, Plaintiff argues that Defendants cannot disprove his allegations with camera footage. *Id.* Plaintiff contends that Defendants' conduct constitutes punishment of a pretrial detainee in violation of *Bell v. Wolfish*, 441 U.S. 520 (1979). *Id.* at 4.

Plaintiff concedes that he fails to show "why TRO or preliminary injunction shall be granted." *Id.* However, Plaintiff intimates that the Court should ignore his filing deficiencies because Defendants control his activity and have denied him access to courts and "fundamental legal material." *Id.* at 7–8. Plaintiff maintains that he will be "subject to suffer severe harm" absent preliminary relief. *Id.* Plaintiff alleges that he is still suffering from stomach troubles that Defendants refuse to treat. *Id.* at 2. Additionally, Plaintiff informs the Court that he is "removing himself" from the vegan diet Defendants provide. *Id.* at 3. Plaintiff argues that preliminary relief is necessary "to resist any further damage to his colan or stomach or mental capacity" resulting from Defendants "cruel and unusual punishment." *Id.* at 3 (written as appears in original).

As an initial matter, Plaintiff is charged with establishing that the *Winter* factors favor granting an injunction. *See Manning v. Hunt*, 119 F.3d 254, 263 (4th Cir. 1997) ("The plaintiff bears the burden of establishing that these factors favor granting the injunction.").

Accordingly, Plaintiff cannot rely on Defendants' alleged inability to produce video footage that contradicts Plaintiff's allegations to carry his burden.

Further, as Plaintiff concedes, he has failed to submit evidence sufficient to establish a "clear showing" of a likelihood of success on the merits. "[A] plaintiff seeking a preliminary injunction generally cannot rely on mere allegations in the complaint but must come forward without some evidence showing a likelihood of success on the merits." *Mahmoud v. McKnight*, 102 F.4th 191, 203 (4th Cir. 2024). Plaintiff's objections merely repeat the conclusory allegations contained in the complaint and fail to point the Court to any specific evidence indicating that he is likely to succeed on the merits of his claims. Although the Court is charged with liberally construing *pro se* filings, it cannot grant Plaintiff the "extraordinary remedy" of a preliminary injunction solely based on unsubstantiated allegations.

Similarly, the Court cannot grant Plaintiff's preliminary injunction based on conclusory allegations that Defendants denied him access to courts and fundamental legal material. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996) (holding that an inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure in effect at the place of incarceration in that his nonfrivolous legal claim had been frustrated or was being impeded); *see also Jones v. Lexington Cnty. Det. Ctr.*, 586 F. Supp. 2d 444, 448 (D.S.C. 2008) ("[T]he law is quite clear that those being temporarily detained in county facilities awaiting criminal trials do not have a constitutional right to a law library.").

As evidenced by Plaintiff's numerous filings, Defendants have not denied Plaintiff access to the courts. Further, it is not entirely clear how access to additional legal material would help Plaintiff submit *evidence* of Defendants alleged constitutional violations. Therefore, Plaintiff's objections are overruled.

V.  **CONCLUSION**

After carefully reviewing the applicable laws, the record in this case, the Report and Recommendation, and the objections thereto, this Court finds the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law. Accordingly, the Court adopts the Report (ECF No. 159) in all regards and denies Plaintiff's motion for a preliminary injunction and temporary restraining order. This matter is hereby recommitted to the Magistrate Judge for further proceedings.

IT IS SO ORDERED.

July 15, 2025
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge